UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS LECHNIR,

        Plaintiff,

v.                                                     Case No. 14-C-1020

RICHARD WELLS, et al.,

        Defendants.

**DECISION AND ORDER**

Following the non-renewal of his employment contract, former University of Wisconsin-Oshkosh baseball coach Thomas Lechnir filed this action contending that the non-renewal constituted a violation of due process and retaliation. The Defendants moved to dismiss almost all of the claims. For the reasons given below, the motion will be granted in part.

**I. Background**

Beginning in 2002, UW-Oshkosh began a campaign to renovate its sports complex. The plan did not include renovation of the baseball field, however. Lechnir, the baseball coach, proposed a new baseball stadium and offered to lead the fundraising efforts needed to finance it, and Chancellor Richard Wells "begrudgingly" approved the project. (ECF No. 12 at ¶ 14.) During the fundraising campaign, Lechnir raised some $668,000 in cash and in-kind donations.

According to Lechnir, personal animosity began infecting the university administration. Chancellor Wells became upset with Lechnir because the funds Lechnir was raising were coming

from the same sources Wells hoped to tap for the sports complex renovations, crowding out Wells' own efforts to raise money. According to Lechnir, Wells was also upset because Lechnir, who had no official fundraising duties, was doing a better job fundraising than Wells, whose job as chancellor entailed significant fundraising efforts. (*Id.* at ¶ 30.) According to the complaint, Vice Chancellor of Student Affairs Petra Roter was a longtime ally of Wells who had come over with Wells from Indiana State to work at Oshkosh, and she became allied with Wells against Lechnir. In addition, Lechnir developed a poor relationship with Defendant Sims (whose role is not specified in the complaint), accusing Sims of misappropriating funds. Thus, by 2012, Sims joined with Wells and Roter to effectuate Lechnir's departure from Oshkosh.

In April 2012, Wells told Lechnir that his "rolling horizons" contract would end in 2013 at the expiration of his then-existing contract. It soon became clear that the reason for this action was a debt of some $250,000 attributed to Lechnir's stadium project. Lechnir asserts that he was unaware of any debt due to his lack of involvement in anything other than the fundraising of the project, and he describes the debt as a "phantom debt" incurred due to accounting practices rather than any actual cost overruns with the stadium project. Defendants Roter and Wells claimed that Lechnir would be able to keep his job if he raised enough funds to pay the debt off, but they increased his fundraising targets in an effort (according to the complaint) designed to make Lechnir fail.

The bad blood spilled over to Lechnir's personnel evaluations, which until 2011 had always been good. In his 2011 evaluation, he was criticized for missing two meetings and failing to do paperwork, both items he believes were pretextual. In addition, Lechnir became puzzled by the inconsistent evaluations he received, some of which indicated renewal of his contract while others,

2

sometimes from the same reviewers, were marked "renewal not recommended." (ECF No. 12 at ¶ 97.)

In May 2012 Chancellor Wells wrote to Lechnir to inform him that his contract would not be renewed in 2013. In another letter offering further explanation, Wells cited "over $250,000 of debt" on the baseball stadium; below-average academic performance of Lechnir's student athletes; timeliness of paperwork and meeting attendance; and community relations. (*Id.* at ¶ 104.) Lechnir states that these were trumped-up performance issues, as evidenced by the fact that the administration turned down a $40,000 per-year donation intended to pay off the debt and keep Lechnir employed.

Eventually Lechnir was afforded an "ad hoc" peer review of the termination decision, with a three-member staff committee hearing Lechnir's assertion that nonrenewal was not warranted. (Lechnir calls the committee a "kangaroo court". (ECF No. 12 at ¶ 134.)) The committee found itself unable to determine whether the grounds cited were sufficient cause for nonrenewal, so it deferred the decision to the chancellor. Chancellor Wells reaffirmed his earlier decision and stated he would not renew Lechnir's contract. In doing so, Wells cited additional grounds, including Lechnir's inability to work cooperatively and his judgment relating to a student athlete. (*Id.* at 145.)

Lechnir sought review in Winnebago County Circuit court, which upheld the nonrenewal, and then appealed to the state court of appeals. In a March 11, 2015 decision, that court affirmed, finding no violation of due process nor any violation of other protected interests. *Lechnir v. University of Wisconsin-Oshkosh,* 2015 WL 1034746 (Wis. Ct. App., March 11, 2015). The parties have recently briefed the issue of claim preclusion resulting from the Plaintiff's state challenge, and so all matters raised by the pending motion are ripe for decision.

3

**II. Fourteenth Amendment Due Process**

    **A. Claim Preclusion**

As noted above, Lechnir challenged his nonrenewal through state administrative and judicial proceedings. The Defendants argue that the state courts' rulings preclude Lechnir from bringing essentially the same claim in federal court. Wisconsin law, which governs the analysis, provides that three factors must be present in order to preclude a later action: (1) identity between the parties or their privies in the prior and present suits; (2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits. *Froebel v. Meyer,* 217 F.3d 928, 933 (7th Cir. 2000). The earlier judgment is conclusive as to all matters which were litigated or which might have been litigated in that proceeding. *Wilhelm v. County of Milwaukee,* 325 F.3d 843, 846-47 (7th Cir. 2003). The Restatement of Judgments provides a succinct explanation:

> A given claim may find support in theories arising from both state and federal law. When the plaintiff brings a claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.

Restatement (Second) of Judgments, § 25 cmt. e.

Here, Plaintiff appealed through an *ad hoc* administrative proceeding, wherein a three-member staff committee reviewed his argument that the alleged deficiencies in his performance did not warrant nonrenewal. When he lost that appeal, he petitioned for review in the state circuit court, pursuant to Wis. Stat. § 227.53(1)(a)2m. He argues, based on *Staats v. County of Sawyer*, that claim

4

preclusion does not apply because he could not have raised the federal claims he now raises in such proceedings. 220 F.3d 511 (7th Cir. 2000). Defendants argue that not only could he raise his due process in the state proceedings, but that Lechnir in fact did do so and is therefore precluded from asserting it here. Whether Lechnir did or did not assert his due process claim in the state proceedings makes no difference. The fact that he was free to do so is enough to preclude his raising it here.

In *Staats*, the plaintiff filed a disability employment discrimination claim under the Wisconsin Fair Employment Act (WFEA) with the State's Equal Rights Division (ERD) of the Department of Workforce Development. The Wisconsin Labor and Industry Review Commission rejected his claims and the state court affirmed its decision. The plaintiff then brought claims in federal court based on the federal Americans With Disabilities Act and the Rehabilitation Act. The district court held that the federal claims were precluded by the state court action but the Seventh Circuit reversed. The Seventh Circuit found no claim preclusion because the plaintiff could not have filed his federal ADA claims with the ERD. "The [state] Equal Rights Division's jurisdiction is limited; it can hear claims brought under WFEA but not the federal anti-discrimination statutes. Even though in a free-standing case the Wisconsin state courts could have heard Staats's federal law claims, the Equal Rights Division could not: it lacked jurisdiction to do so." *Id.* at 516.

*Staats* does not apply here, however, because Lechnir could have asserted his due process claim in the state proceedings. Under Wis. Stat. § 227.57(8) (titled "Scope of Review"), the court "shall reverse or remand the case to the agency if it finds that the agency's exercise of discretion is outside the range of discretion delegated to the agency by law; . . . or is *otherwise in violation of a constitutional or statutory provision.*" Thus, the very statute that defines the scope of state court

5

review provides that the state courts have the ability to grant the Plaintiff relief on constitutional grounds. There is nothing within Chapter 227 that precludes the hearing of federal constitutional claims.

In fact, in *Omernick v. DNR*, 100 Wis.2d 234, 248, 301 N.W.2d 437, 444 (1981), the Wisconsin Supreme Court noted a "fundamental policy that parties to an administrative proceeding must raise known issues and objections and that all efforts should be directed toward developing a record that is as complete as possible in order to facilitate subsequent judicial review of the record under sec. 227.20, Stats. That policy . . . requires that those constitutional issues be raised even though the administrative agency is without power to decide them." Thus, even if the administrative agency lacked the power to decide constitutional issues, Lechnir was obligated to raise them in his challenge.

In short, the holding of *Staats*, an employment discrimination case, does not apply here because the rules governing Lechnir's administrative challenge to the non-renewal decision and the state court review of that decision did not preclude consideration of his federal constitutional claims. In *Staats,* the plaintiff was "forced" (to use that court's term) to split his claims between the state and federal courts, whereas here the Plaintiff *could* have raised his constitutional challenges in the state courts and arguably did. "[I]f there was a forum in which all claims arising out of the single transaction could have been brought, and the plaintiff chooses a forum of limited jurisdiction instead, then the plaintiff's other claims are barred by the doctrine of claim preclusion, because the other claims could have been brought in the forum of general jurisdiction. If, on the other hand, no such forum exists, and the plaintiff is forced to split her claims, a suit in one forum does not bar the plaintiff from also bringing suit in another." *Staats,* 220 F.3d at 516.

This case is much closer to *Froebel v. Meyer,* where the Seventh Circuit found claim preclusion when the plaintiff failed to raise a federal Clean Water Act challenge in his state administrative proceedings. "There is no reason to think that Froebel could not have argued to both the ALJ and the circuit court that the Wisconsin provisions . . . violated the federal Clean Water Act. If he prevailed, then the Wisconsin courts would have concluded that WDNR's removal of Funk's Dam was 'otherwise in violation of a constitutional or statutory provision.' That would have offered a basis in law to modify the ALJ's decision and, under § 227.57(9), fashion appropriate relief." 217 F.3d 928, 936 (7th Cir. 2000). Accordingly, because the federal due process claim could have been raised in the state review process, the claim is precluded.

**B. Procedural Due Process**

Even if the claim were not precluded, there is no reason to reach a different conclusion than the state courts reached. The Defendants argue that the Plaintiff's due process claim must fail because he had no property interest in continued employment, given that his contract was to expire in 2013. Lechnir concedes he had no property interest in a given contract, but argues that such an interest can be created through implied promises, namely, the assurances he received from Sims, Roter and Sonnleitner that his contract would be renewed if he demonstrated efforts to raise money to pay off what he calls the phantom debt arising out of the baseball field construction.

"Absent an express agreement, an at will employee may still prove a property interest in his or her employment under the second test if there is a 'clearly implied promise in their continued employment.' In cases regarding at will employees, in order to demonstrate that there is an interest, a plaintiff must show more than a 'unilateral expectation' or an 'abstract need or desire' for the employment." *Phelan v. City of Chicago,* 347 F.3d 679, 682 (7th Cir. 2003).

7

Lechnir relies on a "fundraising plan" imposed on him by Sims, Roter and Wells as an addendum to his December 2010 evaluation. Under that plan, Lechnir would sell naming rights and signage, and have a phone-a-thon every spring. (ECF No. 12, ¶ 57.) The amended complaint also alleges that Sims and Roter made "clear" that Lechnir's job would be secure if he "worked towards satisfying the phantom debt." (*Id.*, ¶ 58.) In light of these promises, Lechnir alleges he had a reasonable expectation of continued employment, giving rise to a property interest.

Lechnir cites *Vail v. Board of Educ. of Paris Union School Dist. No. 95,* 706 F.2d 1435 (7th Cir. 1983). There, a school board conveyed an offer to Vail, which included the Board's stated intention to renew the one-year contract at the end of the first year. The Board made that statement in response to Vail's explicit concern about job security. "Vail was informed of the offer and told that while the Board could not offer him more than a one year contract, it could assure him of extending the contract for a second year. Vail accepted, traveled to Paris to execute a written contract, and subsequently assumed the duties of athletic director and football coach." *Id.* at 1436. Before the year was up, the school board changed its mind and decided not to renew the contract. The Seventh Circuit upheld the district court's conclusion that a property interest had been created by the board's explicit promise to renew the contract for a second year, a promise that meant Vail "had a two-year employment promise rather than a commitment for indefinite employment." *Id.* at 1438.

By contrast, in *Valentine v. Joliet Tp. High School District No. 204,* the court found no property interest based on alleged oral assurances that the district would recall laid-off guidance counselors on the basis of seniority. 802 F.2d 902, 988 (7th Cir. 1987). The court cited an earlier case, *McElearney v. University of Illinois,* in which the plaintiff sued based on assurances from a

8

department head that his progress was satisfactory. 612 F.2d 285 (7th Cir. 1979). The *Valentine* court contrasted those kind of "informal assurances" with the "definite assurance" given by the school board in *Vail*.

Even taking the complaint's allegations as true, the only thing it alleges is that "Both Sims and Roter made clear throughout the process that if Lechnir worked towards satisfying the phantom debt, his job would be secure." (ECF No. 12, ¶ 58.) The alleged promises are far closer to "informal assurances" than the kind of concrete, actionable statement described in *Vail*, where the board made an explicit promise, in response to Vail's concerns, to induce him to leave his current job, move to a new city, and accept a new position. In essence, the allegation here is that the Defendants told Lechnir that if he tried to do a good job, he would retain his position. But that is the implicit promise in almost *every* job imaginable, not just Lechnir's. Presumably most employees expect their contracts to be renewed upon their satisfactory performance, and those expectations may often sprout from the kinds of informal assurances and utterances that are common in the workplace. But if such commonplace expectations are enough to create a protected property interest, the United States Constitution would obviate the need for most public employment contracts.

Here, the alleged assurances are even less actionable in light of the fact that Lechnir does not allege that Wells, the Chancellor and ultimate decision-maker, made any such assurances. Even if Sims and Roter played a role in the process, it would be unreasonable for a high-ranking university official like Lechnir to rely on vague promises made by individuals who lacked the power to fully follow-through on such promises. In *Vail*, of course, the promise was made by the school board itself and the school superintendent—the only people with the power to honor such a promise.

9

Here, there is no indication that either Roter or Sims had the power to live up to such assurances if Wells wanted otherwise.

In sum, the Due Process claim is precluded; and even if it weren't, it would fail to state a claim upon which relief may be granted.

**III. Retaliation**

The Defendants also argue that Lechnir has not adequately stated any retaliation claims against Defendants Roter, Sims and Sonnleitner. Surprisingly, Defendants do not argue claim preclusion here even though the state court of appeals concluded that "the record does not substantiate" Lechnir's accusation that the nonrenewal was a result of his whistleblowing. 2015 WI App 37 ¶ 24, 2015 WL 1034746, *4. Instead, they argue merely that there is no allegation that Defendants Roter, Sims or Sonnleitner took any adverse action against Lechnir. Defendants argue it was Wells (who has not moved to dismiss the retaliation claim) who decided to take the adverse action. And, to the extent the other Defendants took any action at all, the actions were trivial.

To prove a First Amendment employment retaliation claim under 42 U.S.C. § 1983, a plaintiff must establish three primary elements. First, the plaintiff must show that he engaged in speech that was constitutionally protected. *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006). Second, the plaintiff must prove that he suffered an adverse employment action as a result of his protected speech that was sufficiently adverse so as to deter the exercise of the free speech. *Vose v. Kliment,* 506 F.3d 565, 569–570 (7th Cir. 2007). And third, the plaintiff must present evidence to establish that a reasonable jury could find that his speech was a "substantial" or "motivating" factor for his adverse employment action. *Graber v. Clarke,* 763 F.3d 888, 894-95 (7th Cir. 2014).

10

In that Defendants have not moved for dismissal of Lechnir's First Amendment retaliation claim against Wells, they do not argue that the complaint fails to allege sufficient facts to state such a claim as to him. The argument offered by those Defendants who have moved for dismissal is that since only Wells had the final decision on whether to renew Lechnir's contract, only he could have retaliated against Lechnir. Lechnir counters, however, by pointing out that he has alleged that the Defendants conspired together to retaliate against him for his constitutionally protected speech. While it may have been Wells who made the ultimate decision not to renew Lechnir's contract, the complaint alleges that Rotor, Sims and Sonnleitner conspired with him by providing the pretext needed to provide cover for their retaliation against him. (Am. Compl. ¶ 180.)

A state actor who conspires with other state actors to violate another's constitutional rights can be liable under § 1983 for resulting damages. *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). Thus, the fact that Defendants Roter, Sims and Sonnleitner did not have final authority over Lechnir's contract does not mean they could not be liable for conspiring with Wells to terminate him in retaliation for his public speech. "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Id.* at 1007. While the amended complaint is less than clear as to precisely what public statements Lechnir made, when and where he made them and what each of the defendants did in retaliation, Defendants do not argue that it is otherwise insufficient and thus there is no need to address the retaliation claim further. Defendants' motion to dismiss that claim is denied.

**IV. State Law Whistleblower Claim**

Finally, the Defendants move to dismiss the Plaintiff's state law whistleblower claim because he has not pled compliance with Wisconsin's notice of claim statute. Under Wis. Stat. § 893.82(3), "no civil action or civil proceeding may be brought against any state officer, employee or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employee's or agent's duties,. . . unless within 120 days of the event causing the injury, . . . the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim . . ." Section 893.82(2m) provides that "No claimant may bring an action against a state officer, employee or agent unless the claimant complies strictly with the requirements of this section."

Lechnir argues that these provisions do not apply because he is suing individuals rather than the state itself, but by their plain terms the state statutes apply to actions against state employees and agents. He also suggests that the statute does not apply because he is seeking, in addition to damages, non-monetary relief such as a letter of apology. It is true that § 893.82(3) does not apply to claims for injunctive and declaratory relief, *Casteel v. McCaughtry,* 176 Wis.2d 571, 585, 500 N.W.2d 277 (1993), but that is of no help here.

Here, the complaint seeks no non-monetary relief resulting from any state whistleblower violation. (ECF No. 12 at 29.) Although the Plaintiff might ask the court or jury to require Defendant Wells to write an apology letter (for example), that is not a "claim" for injunctive relief that would escape the notice of claim statute. Accordingly, the failure to follow the notice of claim procedures bars the state whistleblower claim.

12

**V. Conclusion**

For the reasons given above, Defendants' motion to dismiss is granted as to Lechnir's Due Process claim and his state whistleblower claim. The motion is denied as to the First Amendment retaliation claim. The clerk will schedule the case for a Rule 16 conference.

Dated this 29th day of June, 2015.

              /s William C. Griesbach
             William C. Griesbach, Chief Judge
             United States District Court